**NOT FOR PRINTED PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| C.C., JR., et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | CIVIL ACTION No. 1:13-cv-685 |
| v. | § | |
| | § | JUDGE RON CLARK |
| BEAUMONT INDEPENDENT SCHOOL DISTRICT, | § | VSL |
| | § | |
| | § | |
| *Defendant.* | § | |

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiffs C.C. Sr. and J.C. bring this action on behalf of C.C. Jr., their minor child, (collectively, "Plaintiffs") to recover attorney's fees as the prevailing party in the due process hearing below, brought pursuant to the Individuals with Disabilities in Education Act ("IDEA"). Defendant Beaumont Independent School District ("BISD") filed a counterclaim disputing that Plaintiffs were the prevailing party and challenging the decision of the Special Education Hearing Officer ("Hearing Officer") in the due process hearing.

Plaintiffs filed a motion for summary judgment, arguing that: (1) BISD's counterclaim should be dismissed for want of subject matter jurisdiction; and (2) Plaintiffs were the prevailing party for purposes of recovering attorney's fees under IDEA. (Dkt. # 16). BISD filed a cross-motion for summary judgment, requesting the Court to (1) rule that the Hearing Officer committed plain error in relying on Petitioner's Exhibit 10-1—an email that BISD contends the Hearing Officer erroneously concluded applied to C.C. Jr.'s case; (2) strike those Findings of Fact and Conclusions of Law that were based on the Hearing Officer's error in relying on

Petitioner's Exhibit 10-1; and (3) limit Plaintiffs' status as a prevailing party based on the Hearing Officer's erroneous Findings of Fact and Conclusions of Law or permit BISD to make such arguments regarding Plaintiffs' prevailing party status during the parties' cross-motions concerning the award of attorney's fees. (Dkt. # 17). Alternatively, BISD requests the court to rule that a Special Education Hearing Officer has the ability to reconsider "undisputed and clear errors" in their written decisions and to remand this matter to provide the Hearing Officer with the opportunity to do so. (Dkt. # 17, at p. 2).

The court declines to dismiss BISD's counterclaim for want of jurisdiction but finds that Plaintiffs were the prevailing party below. The court declines to strike any Findings of Fact or Conclusions of Law of the Hearing Officer. The court limits Plaintiffs' status as a prevailing party to the issues upon which Plaintiffs prevailed, to the extent that they are severable from the issues upon which Plaintiffs did not prevail. Therefore, the court grants in part Plaintiffs' Motion for Summary Judgment (Dkt. # 16) and denies Defendant's Cross-Motion for Summary Judgment (Dkt. # 17).

## I. Background

### A. IDEA Statutory Framework

Because the IDEA is filled with complicated procedures and acronyms, a short overview of the Act is useful here. Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). To guarantee that each child has access to a FAPE, Congress enacted the IDEA's Child Find provisions, which impose on local education agencies an affirmative duty to have policies and procedures in place

to locate and timely evaluate children with suspected disabilities in its jurisdiction. 34 C.F.R. § 300.111(a)(1). This obligation extends to children beginning on their third birthday. 34 C.F.R. § 300.101.

"The Child Find duty is triggered when the local education agency has reason to suspect a disability coupled with reason to suspect that special education services may be needed to address that disability." *El Paso Indep. Sch. Dist. v. Richard R.*, 567 F. Supp. 2d 918, 950 (W.D. Tex. 2008). When these suspicions arise, the local education agency must evaluate the student by performing a Full and Initial Evaluation ("FIE") within a reasonable time after school officials have notice of behavior likely to indicate a disability. *Id.*

Upon a finding that a child has a disability, an Admissions, Review, and Dismissal ("ARD") Committee meets to develop Individualized Education Plan ("IEP") for the child. *R.H. v. Plano Indep. Sch. Dist.*, 607 F.3d 1003, 1007 (5th Cir. 2010); *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F. by Barry F.*, 118 F.3d 245, 247 (5th Cir. 1997); *see also* 20 U.S.C. § 1415(b)(1). The ARD committee consists of a school district representative, a special education teacher, the child's parents or guardians, and where appropriate, the child. *Michael F.*, 118 F.3d at 247. The FAPE, described as an IEP and developed by an ARD, need not be the best possible plan for the child, nor one that will maximize the child's potential; rather, it need only be a basic floor of opportunity, specifically designed to meet the child's unique needs, and supported by services that will permit him to benefit from the instruction. *Id.* Nevertheless, the educational benefit must be more than de minimis—it must be likely to produce progress, not regression or trivial educational advancement. *R.H.*, 607 F.3d at 1008. In short, an IEP must be designed to achieve a "meaningful" educational benefit. *Michael F.*, 118 F.3d at 248.

The IDEA also requires states to establish and maintain certain procedural safeguards to ensure that children with disabilities are receiving this free appropriate public education. 20 U.S.C. § 1415(a). These safeguards include allowing parents to serve on the ARD and requiring the local education agency to provide parents with written notice of plans to change—or refusal to change—an identification or placement. *See Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 524 (2007); *Klein Indep. Sch. Dist. v. Hovem*, 690 F.3d 390 (5th Cir. 2012). The state must also provide parents with an opportunity to present complaints regarding the "identification, evaluation, or educational placement of the child, or the provisions of a [FAPE]." 20 U.S.C. § 1415(b)(1). If the complaints are still not resolved, the parents are entitled to an impartial due process hearing conducted by the state or local educational agency to determine whether the child received a FAPE. 20 U.S.C. §§ 1415(f)(1)(A), 1415(f)(3)(E)(i). After exhausting these administrative procedures, the aggrieved party may appeal the hearing officer's decision by bringing a civil action in a federal district court.[1] 20 U.S.C. § 1415(i)(2)(A); *see also* 19 Tex. Admin. Code § 89.1151(b) (noting that Texas has only a one-tier administrative process). Likewise, a party claiming entitlement to attorney's fees under the IDEA may also file a claim in district court. 20 U.S.C. § 1415(i)(3).

**B. Factual and Procedural History**

C.C. Jr. turned three years old in January 2013. Well before C.C. Jr.'s third birthday, C.C. Jr.'s mother, Plaintiff J.C. ("J.C."), began noticing difficulties in C.C. Jr.'s speech

---

[1] In this case, it is undisputed that Plaintiffs exhausted all administrative procedures before appealing to this court.

intelligibility. J.C. has been a diagnostician[2] at one of BISD's elementary schools for several years. J.C. expressed her concerns about C.C. Jr.'s communication issues to two of her colleagues—Ms. Nichoy, one of BISD's speech therapists, and Ms. Marrero, one of BISD's speech language pathologists. Both Ms. Nichoy and Ms. Marrero worked at the same campus as J.C.—Amelia Elementary ("Amelia"). At that time, C.C. Jr. was enrolled in a full-time daycare program.

J.C. formally requested BISD to evaluate C.C. Jr. for the first time in March 2013. J.C. was told that BISD would not provide C.C. Jr. with a special education referral until C.C. Jr. was screened. BISD referred J.C. to a local church day school for screening,[3] which J.C. declined because she preferred that Ms. Marrero perform the evaluation.

In April of 2013, Ms. Marrero evaluated C.C. Jr. and concluded that he had an articulation disorder. She referred C.C. Jr. for a Full and Initial Evaluation (FIE). J.C. and C.C., C.C. Jr.'s father, completed BISD's special education referral packet on April 26, 2013; they signed a Consent for Assessment/Evaluation form on May 8, 2013, which authorized BISD to evaluate C.C. Jr. in all areas. BISD's FIE consisted only of a speech evaluation—BISD did not assess C.C. Jr. in all areas, did not conduct an audiological evaluation, and did not conduct an assistive technology evaluation.

There appear to be four versions of BISD's FIE of C.C. Jr. Although only one FIE was conducted, the four versions are inconsistent in team membership and content. The first version

---

[2] As a diagnostician, J.C. assesses elementary school students to determine if they have disabilities. J.C. is also certified as a special education teacher and has two master's degrees—one in special education and one in education administration.

[3] In addition to organizing screenings at a local church day school, BISD conducts the statutory Child Find obligation by having monthly meetings with Early Child Intervention (ECI) programs, by communicating with families served by ECI, by placing advertisements and brochures in newspapers, doctors' offices and other locations.

purports to have been completed on May 24, 2013 and classifies C.C. Jr.'s articulation deficit as "moderate." This version indicates that a six-member multi-disciplinary team performed the FIE, including a special education teacher and a general education teacher.

The second version of the FIE purports to have been completed on May 28, 2013 and classifies C.C. Jr.'s articulation deficit as "mild." This version indicates that a seven-member team performed the FIE. This version is signed and contains a signed FIE Disability Report. The format of this version of the FIE is different than the format of the other versions.

The third version of the FIE purports to have been completed on May 24, 2013, and classifies C.C. Jr.'s articulation deficit as "mild." This version indicates that a seven-member team performed the FIE. It is dated May 24, 2013, and is not signed.

The fourth version of the FIE purports to have been completed on May 24, 2013, and classifies C.C. Jr.'s articulation deficit as "moderate."

J.C. believed that an audiological assessment was necessary to determine whether there were hearing problems, and if so, whether such problems were causing or contributing to the speech deficits. J.C. obtained an independent audiological evaluation from the Lamar University Audiological Clinic on April 23, 2013. She notified BISD that she was obtaining the evaluation and requested payment.

At the time of the FIE, Plaintiffs had already enrolled C.C. Jr. at St. Anthony Cathedral Basilica School for the 2013-2014 school year. It was their intent to have C.C. Jr. dual-enrolled at St. Anthony Cathedral Basilica School and BISD for that year.

On May 24, 2013, BISD gave Plaintiffs notice of a meeting to be held on May 28, 2013. Plaintiffs waived the five-day notice period. Ms. Marrero invited Plaintiffs and a BISD administrator. She did not invite a day care representative or a general education representative.

The BISD administrator left the meeting early. J.C. asked to continue the meeting after telling Ms. Marrero that she knew her rights. There appear to be three versions of the documentation from the May 28, 2013 meeting. It is undisputed that the parent had difficulty obtaining this documentation from BISD, requiring intervention of the Hearing Officer who ordered BISD to turn over the documents. Neither BISD nor BISD's attorneys could determine which documents accurately reflected what happened in the meeting.

One version of the document is entitled "Service Plan." This document references the Speech and Language evaluation that Ms. Marrero performed on May 24, 2013. This document also includes Plaintiffs' signatures waiving their right to five days' notice of the meeting. The signature page has a notation that everyone in attendance agreed on the outcome, but does not include the names or signatures of any committee members who were present. This document also includes speech goals and objectives dated August 27, 2013.[4] However, there was no meeting on August 27, 2013, and the document includes no minutes reflecting the origin of this date. No other goals are stated.

This document also includes two sets of minutes reflecting different deliberations. One set of minutes states C.C. Jr.'s services under the "Service Plan" will begin during the 2013-2014 school year, with speech services to be provided once a week for thirty minutes. The second set of minutes has been crossed out with a handwritten line; this set reflects that speech services are to be provided twice a week for thirty minutes each beginning the last week of the 2012-2013 school year, with C.C. Jr. to receive six weeks of extended school year ("ESY") services, and walk-in services beginning in the 2013-2014 school year. This set of deliberations contains a notation that all committee members agreed to the services.

---

4 The only meeting that took place was on May 28, 2013.

A second version of the meeting documentation is entitled "ARD Meeting" and is dated June 1, 2013. There was no meeting on June 1, 2013. The signature page in this documentation has no names or signatures of the committee member in attendance but reflects that the ARD committee meeting resulted in disagreement. This version contains deliberations entitled "ARD Deliberations" requiring that speech services are to be provided twice a week for thirty minutes each beginning the last week of the 2012-2013 school year, with C.C. Jr to receive six weeks of ESY services, and walk-in services beginning in the 2013-2014 school year.

A third set of meeting documents is dated June 7, 2013, and is entitled "Service Plan." No meeting occurred on June 7, 2013. This version reflects an FIE dated May 27, 2013, rather than May 24, 2013, the date the FIE was actually performed. The signature page with this documentation includes a notation that the plan was reached by mutual agreement and contains the typed names of the parents and the school personnel present but includes no signatures. The document fails to note that no instructional staff was present or that the administrator left before the end of the meeting. The typed deliberations page states that the ARD Committee met on May 28, 2013, that C.C. Jr. had a "mild" speech impairment, that the parent reported that C.C. Jr. stutters, and that the parent disagreed that C.C. Jr. had a "mild" speech impairment. The deliberations contain recommendations for ESY but include no reference to speech services beginning the last week of the school year. The deliberations page also has the written notation that the minutes were not typed by the speech language pathologist.

The special education director never saw a completed progress report on C.C. Jr.'s IEP goals and objectives. Plaintiffs never received a completed IEP goals/objectives progress report. The speech language pathologist did not issue a progress report on C.C. Jr.'s goals and

objectives, nor did she attempt to distinguish between the progress he was making with his Lamar University speech services and the progress he was making with her.

Plaintiffs enrolled C.C. Jr. in Amelia Elementary on May 31, 2013. C.C. Jr. received speech services on that date. The speech therapist appeared for C.C. Jr.'s first speech session without having ever seen C.C. Jr.'s FIE. BISD did not provide this speech therapist with goals or objectives for C.C. Jr. On June 8, 2013, someone withdrew C.C. Jr. from BISD without his parents' consent and without prior notice.[5]

On June 17, 2013, Plaintiffs filed a Request for a Due Process Hearing, alleging that BISD denied C.C. Jr. a FAPE during the 2012-2013 school year. The due process hearing was held on October 16, 2013. During Ms. Marrero's testimony at the due process hearing, Plaintiffs' counsel questioned Ms. Marrero concerning Petitioners' Exhibit 10-1 ("10-1"), which is a copy of an email from Ms. Marrero to Holly Hancock, Principal of Amelia. The email is

---

[5] It is unclear who withdrew C.C. Jr. from BISD, and it is unclear how C.C. Jr. was withdrawn from BISD. It appears that someone in the BISD administration withdrew C.C. Jr. The administrative record contains an email from J.C. to Mrs. Hancock, principal of Amelia Elementary, dated August 7, 2013, which states:

> My son, Carl . . . is withdrawn per TEAMS effective 06/08/2013. I did not authorize this withdrawal. I was unaware that BISD had withdrawn my son. I am requesting for him to be re-enrolled in BISD at Amelia Elementary School. I filled out the required employee transfer paperwork last school year. His special education referral was sent to Amelia, his assessments in May 2013 was [sic] conducted at Amelia, [sic] his ARD meeting in May 2013 was held at Amelia.

(R. at 960.) It appears that BISD re-enrolled C.C. Jr. in Amelia after receiving J.C.'s email, as the record contains another email from J.C. to Senecia Saveat, dated August 22, 2013, which states:

> Thank you for the voicemail message confirming my son, Carl['s] . . . enrollment at Amelia for the 2013-2014 school year, as per the employee campus transfer request I submitted on his behalf.

(R. at 965.)

dated January 28, 2013 and refers to a child who had been screened at Amelia on or before that date. The name of the student on the email was redacted for privacy purposes. During the testimony of Ms. Marrero, BISD objected to the continued reference to P10-1as if it referred to C.C. Jr. The Hearing Officer declined to remove the email from evidence but acknowledged that the document did not refer to C.C. Jr. stating:

> It's in evidence. I'm not removing it from evidence. I've already noticed that there's nothing that indicates it was specific to [C.C. Jr.] and so I can give it the weight that it merits. But it's already in evidence.

(R. at 2438.)

On October 16, 2013, the Hearing Officer issued her decision, in which she rendered Findings of Fact and Conclusions of Law as if this email had pertained specifically to C.C. Jr. Relevant to BISD's counterclaim, the Hearing Officer made the following Findings of Fact that BISD contends erroneously interpreted the January 28, 2013 email as pertaining to C.C. Jr:

> 4. According to the testimony and the exhibits, the speech language pathologist informed the parent that the District could not conduct an FIE unless and until [C.C. Jr.] enrolled in the District. RR 609; P10-1. The speech language pathologist referred the parent to the District's Child Find screening process and placed the referral on hold. P10-1.
>
> ****
>
> 6. On January 27, 2013, the speech pathologist from the parent's campus screened [C.C. Jr.] and notified other District personnel that the student needed a referral for special education and that referral would be placed on hold until he enrolled in the District. P10-1. The speech language pathologist's documentation and testimony is consistent with the parent's testimony that she was referred to the District's PPCD screening. RR215-216; P10-6. The parent declined the screening and eventually requested a referral packet for a special education evaluation in late March, 2013. RR216. The school parent did not provide the referral packet at that time, but waited until the speech pathologist on the parent's campus screened him on April 17, 2013.
>
> In analyzing these Findings of Fact, the Hearing Officer stated:
>
> On January 28, 2013, the speech language pathologist notified other school personnel that [C.C. Jr.] needed further evaluation that could not be

> completed until he was enrolled. The speech language pathologist's email corroborates the parent's testimony that she was told the evaluation could not occur unless [C.C. Jr.] was enrolled. P10-1. The speech pathologist also stated in the email that the evaluation would be put on hold until [C.C. Jr.] attended a Special Education screening at a local church, where monthly screenings were administered by the District.
>
> The District was on notice that the student required an evaluation for special education and related services on January 27, 2013. This is the date that the District's duty to the student arose.
>
> Even the parent acknowledges that she did not request an actual referral until March 2013. RR207. However, the District was clearly on notice that the student had a suspected speech disability on January 27, 2013 and should have initiated the referral process at that time.

(R. at 10-11.)

In sum, the Hearing Officer determined that: (1) BISD failed to timely evaluate C.C. Jr. as a student eligible for services under the IDEA; (2) BISD denied C.C. Jr.'s parents meaningful participation in developing C.C. Jr.'s educational program by failing to provide them with copies of C.C. Jr.'s FIE and IEP; (3) BISD failed to develop appropriate IEP goals and objectives to meet C.C. Jr.'s academic and non-academic needs; and (4) BISD erred in providing C.C. Jr. a Service Plan rather than offering an opportunity for dual enrollment and thus a FAPE.

On October 21, 2013, BISD filed a Motion for Reconsideration with the Hearing Officer, requesting her to revise her decision based on the "clear error" of relying on evidence unrelated to C.C. Jr. Plaintiffs filed a response in opposition. On November 19, 2013, by a one-line email, the Hearing Officer refused to take up the Motion to Reconsider because she did not believe she had jurisdiction to reconsider a final decision. *See* Hearing Officer Email, R. at 25 ("Please be advised that I do not have jurisdiction to rule on the motion to reconsider and will not do so.").

BISD did not appeal the Hearing Officer's decision to this court. Plaintiffs filed a complaint in this court to recover attorney's fees as the prevailing party in the due process

hearing. BISD filed an answer to Plaintiffs' complaint and counterclaim. Pursuant to this court's scheduling order, Plaintiffs filed a Motion for Summary Judgment on their complaint, and BISD filed a Motion for Summary Judgment on its counterclaim.[6] The court will first review the merits of BISD's Counterclaim Motion because it contests portions of the Hearing Officer's decision that potentially affect the court's analysis of whether Plaintiffs are entitled to attorney's fees.

**II. Plaintiffs' Motion to Dismiss BISD's Counterclaim**

Plaintiffs move to dismiss[7] BISD's counterclaim under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Plaintiffs argue that because the time for BISD to appeal the Hearing Officer's decision has lapsed, BISD should not now be able to bring an appeal masked as a counterclaim. (Dkt. # 16, at p. 13-14).

Under IDEA, any party aggrieved by the findings and decision of a Special Education Hearing Officer may "bring a civil action" in United States District Court within ninety days of the Hearing Officer's decision. 20 U.S.C. § 1415(i)(2). The Hearing Officer issued her decision on October 16, 2013. In this case, Plaintiffs timely filed a complaint in this court, initiating a suit for attorney's fees. BISD answered and asserted its compulsory counterclaim[8] on January 21, 2014, after the ninety-day period had elapsed. In their 12(b)(1) motion, Plaintiffs contend that

---

6 Pursuant to this court's scheduling order, the deadline for Plaintiffs to file a motion on attorney's fees is twenty-one days after the court's ruling on dispositive motions. (Dkt. # 12).

7 Plaintiffs' Motion to Dismiss is part of their Motion for Summary Judgment. *See* Dkt. # 16, at p. 13-14.

8 Here, BISD's counterclaim is compulsory because it arises from the same administrative hearing and decision, involves the same child and school district, and relies on the same law. *See* Fed. R. Civ. P. 13(a)(1)(A) (stating that a counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim").

because BISD's counterclaim was brought after the ninety-day statute of limitations had expired, it must be dismissed as time-barred.

The court must therefore consider whether a party asserting a compulsory counterclaim under § 1415 "bring[s] a civil action" subject to the ninety-day limitation in the statute. The plain language of this IDEA provision limits only the time in which a party may "bring an action" in federal court, and not the time in which a defendant may file a counterclaim. *Ruben A. v. El Paso Indep. Sch. Dist.*, 414 F. App'x 704, 706-707 (5th Cir. 2011); *Johnson H. v. Souderton Area Sch. Dist.*, 562 F.3d 527, 530 (3d Cir. 2009). Therefore, § 1415 "neither expressly nor impliedly limits the filing of counterclaims in response to civil actions brought in federal court." *Ruben A.*, 414 F. App'x at 707. Defendant's counterclaim is not time-barred. The court denies Plaintiffs' motion to dismiss.

## III. Analysis of Summary Judgment Motions

### A. BISD's Counterclaim Motion

#### 1. Hearing Officer's Decision

BISD moves for summary judgment on its counterclaim, challenging the Hearing Officer's decision that BISD had notice of C.C. Jr.'s parents' concerns in January 2013 and that Petitioner's Exhibit 10-1 ("P10-1")— a January 28, 2013 e-mail—pertained specifically to C.C. Jr. Specifically, BISD contends that the Hearing Officer erred in concluding that: (1) P10-1 specifically references C.C. Jr. and BISD's actions with regard to C.C., Jr.; (2) BISD required that C.C. Jr. be enrolled before it would refer C.C. Jr. for special education services or conduct a formal evaluation of C.C. Jr.; (3) BISD had knowledge of the C.C. Jr.'s parents' concerns on or before January 27, 2013, and that BISD's duty to identify and provide services for C.C. Jr. arose on January 27, 2013; (4) BISD had procedural failures due to a delay in offering services to C.C.

Jr. and BISD failed to address C.C. Jr.'s areas of suspected need by delaying services thirty or more days; and (5) compensatory services are to be calculated using the timeline containing January 27, 2013, as the date BISD was notice of C.C. Jr.'s suspected need. (Dkt. # 17, at p. 12).

**a. Standard of Review**

The summary judgment standard for claims filed pursuant to 20 U.S.C. § 1415(i) is unique. The IDEA provides that when reviewing a decision by a special education hearing officer, a district court (1) "shall receive the records of the administrative proceedings;" (2) "shall hear additional evidence at the request of a party;" and (3) "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The parties have not requested that the court hear additional evidence on any matter. Therefore, the court's review is limited to the records of the administrative proceedings.

While the district court's review of a hearing officer's decision is "virtually de novo, it is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Centr. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982). Instead, "due weight" is to be given to the hearing officer's decision. *Id.* Thus, "courts must be careful to avoid imposing their view of preferable education methods upon the States. The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to the state and local educational agencies in cooperation with the parents or guardians of the child." *Id.* at 207.

**b. Analysis**

BISD first argues that the Hearing Officer erred in finding that the P10-1 references C.C. Jr. or BISD's actions regarding C.C. Jr. Upon reviewing the administrative record, the court finds that P10-1 does not reference C.C. Jr. P10-1 is an email that was sent from Ms. Marrero to Holley Hancock, Principal of Amelia, and indicates that a student screened before January 28, 2013 has a Speech and Language Impairment. It appears that the student's name in P10-1 has been redacted for privacy purposes. Moreover, it is undisputed that C.C. Jr. was not screened until April 17, 2013, so the e-mail cannot refer to him.

It is undisputed that P10-1 does not pertain specifically to C.C. Jr. At the due process hearing, Defense Counsel objected to Plaintiffs' Counsel questioning Ms. Marrero as if P10-1 pertained specifically to C.C. Jr. Plaintiffs' Counsel stated on the record:

> Since everybody is arguing about this point. My – the reason we included it was to show the District's procedure and that they required enrollment before they do a referral which is contrary and so we included that on purpose for that reason.

(R. at 2438.) The Hearing Officer noted on the record that nothing in P10-1 indicated that it specifically pertained to C.C. Jr. and that he would "give it the weight that it merits." (R. at 2438.)

In their response to BISD's motion for summary judgment, Plaintiffs agree that P10-1 does not pertain to C.C. Jr. *See* Pl. Resp. to Def. Mtn., Dkt. # 19, at p. 7, ¶ 1. Similarly, in its response in opposition to Plaintiffs' Motion for Summary Judgment, "[d]uring the testimony of Ms. Marrero, it was made clear that the parties and the Hearing Officer understood the email referred to a student other than C.C. [Jr.]." Def. Resp. to Pl. Mtn., Dkt. # 20, at p. 3, ¶ 16. BISD cannot both claim that it was clear that the Hearing Officer understood P10-1 and claim that the Hearing Officer misunderstood P10-1. Although the Hearing Officer's citations of P10-1 in

Findings of Fact Nos. 4 and 6 may have been confusing, there is no dispute as to the Hearing Officer's understanding of P10-1. Therefore, any error is harmless.

P10-1 is evidence of BISD's policy of not evaluating students for disabilities until they were enrolled in BISD. Other evidence corroborates that this is BISD's policy and that BISD communicated this policy to C.C. Jr.'s parents when J.C. inquired about C.C. Jr. being screened and evaluated. At the due process hearing, J.C. testified that she was told that C.C. Jr. could not be evaluated for a disability unless he was enrolled in BISD. Likewise, Ms. Marrero testified that in the time she worked at BISD, the policy was to only process special education referrals for students who were enrolled in BISD. The Hearing Officer's Conclusions of Law stemming from P10-1 are not brought into question because P10-1 does corroborate them.

Second, BISD contests the Hearing Officer's finding that BISD had knowledge of C.C. Jr.'s parents' concerns about C.C. Jr.'s speech impediment on or before January 27, 2013, and that BISD's obligation to identify and evaluate C.C. Jr. arose on or before January 27, 2013. Under IDEA, a district's Child Find obligation is triggered when the district "has reason to suspect a disability coupled with reason to suspect that special education services may be needed to address that disability." *Richard R.*, 567 F. Supp. 2d at 950.

BISD argues that J.C.'s conversation with Ms. Marrero is not sufficient to give BISD reason to suspect that C.C. Jr. had a disability; rather, BISD argues that it did not have reason to suspect C.C. Jr.'s disability until J.C. formally requested a special education referral packet in March of 2013. However, the court cannot find, and BISD does not offer, any case law stating that "reason to suspect" is limited to instances of a formal request for a referral packet. If Congress had intended such a restrictive bright-line test, it would have said so. *See, e.g.*, *Bates v.*

*United States*, 522 U.S. 23, 29 (1997) ("[W]e ordinarily resist reading words . . . into a statute that do not appear on its face.").

According to the record, J.C. first mentioned C.C. Jr.'s speech impediment well before his third birthday. J.C. recorded C.C. Jr. speaking on her phone and played the recording for Ms. Marrero. Ms. Marrero told J.C. that C.C. Jr. needed to be screened. At the due process hearing, witnesses speculated that this conversation occurred when C.C. Jr. was approximately two and a half years old, but no witness provides an exact date. The earliest exact date in the record is the date of C.C. Jr.'s third birthday, which parties agree was January 25, 2013. The court finds that due to J.C.'s conversations with Ms. Marrero, BISD had notice of C.C. Jr.'s disability by his third birthday on January 25, 2013. Therefore, BISD's duty to identify and provide services for C.C. Jr. arose on January 25, 2013.

BISD next argues that the Hearing Officer erred in finding that BISD had procedural failures due to a delay in offering services to C.C. Jr. The court disagrees. A court follows a two-part test to determine whether a school district has provided a free and appropriate education:

> First, has the State complied with the procedures set forth in the [IDEA]? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

*Rowley*, 458 U.S. at 206-07. A procedural violation of the IDEA does not constitute a violation of the right to a FAPE unless it results in the loss of an educational opportunity to the student or a loss of the student's parents' opportunity to participate in the IEP process. *Adam J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 812 (5th Cir. 2003).

In reviewing the administrative record, the court finds, by a preponderance of the evidence, that BISD committed several procedural violations of the IDEA, which impeded C.C. Jr.'s right to a FAPE. First, BISD delayed the evaluation of C.C. Jr. after J.C.'s conversation with BISD personnel regarding her concerns about C.C. Jr.'s speech progress. IDEA's Child Find provisions require BISD to evaluate a child suspected of having a disability within a reasonable time of identifying him. As discussed above, J.C. initially mentioned her concerns to Ms. Marrero and Ms. Nichoy well before January 25, 2013. At that time, Ms. Marrero told J.C. that C.C. Jr. had to be enrolled in BISD before C.C. Jr. could be evaluated. Ms. Marrero testified at trial, J.C. testified at trial, and P10-1 corroborates that BISD's policy was to not evaluate a student, regardless of whether BISD had reason to suspect that the student had a disability, unless that student was enrolled in BISD.

BISD's policy is contrary to the IDEA. Under Child Find provisions, BISD has a duty to locate, identify, and evaluate all children with disabilities who reside within the district's boundaries, regardless of whether they are enrolled in BISD.[9] *See, e.g.*, 34 C.F.R. § 300.111 (noting that the State must have in effect policies and procedures to ensure that all children with disabilities residing in the State, including children with disabilities who are homeless, wards of the State, or attending private schools, are identified, located, and evaluated). BISD's policy delayed C.C. Jr.'s evaluation. Had BISD not had such a policy in place, it is likely that C.C. Jr. would have been screened and evaluated by his third birthday, on January 25, 2013.

BISD obtained consent from J.C. and C.C. Sr. for C.C. Jr.'s evaluation on May 8, 2013, and conducted a speech evaluation on May 24, 2013. Had BISD obtained consent on January 25, 2013, it would have had sixty days from that date to complete the evaluation, and thirty days

---

[9] It is undisputed that C.C. Jr. resided within the boundaries of BISD at all times relevant to the underlying due process hearing and this lawsuit.

after it was completed to conduct the initial ARD meeting to determine eligibility and services. *See* 34 C.F.R. §§ 300.301(c), 300.323. This procedural error resulted in a delay of services for C.C. Jr. of approximately thirty days, as C.C. Jr. began to receive services on May 31, 2013.

Second, C.C. Jr.'s FIE was not completed in advance of the ARD committee meeting, meaning that the ARD committee attempted to create an IEP for C.C. Jr. without knowing the full extent of C.C. Jr.'s disabilities. The only people in attendance at the meeting were the parents, Ms. Marrero, and the school administrator, who left before the end of the meeting. That is not a duly constituted meeting. 34 C.F.R. § 300.021. Although the record is replete with evidence that J.C. knew that the meeting was not a duly constituted meeting yet insisted on the meeting moving forward, this evidence does not excuse BISD's failure to comply with the IDEA. *See* 34 C.F.R. § 300.321(e) (noting the limited reasons for excusal of attendance of IEP team members at ARD Committee meeting).

Third, multiple versions of C.C. Jr.'s FIEs and IEPs exist. It is clear from the record that parties and witnesses could not determine which IEP was operative or which version of the FIE formed the basis of the IEP. Likewise, the Hearing Officer could not determine, nor can this court determine, which IEP was operative, or which version of the FIE formed the basis of the FIE. Some versions of the FIE note that C.C. Jr.'s articulation disorder is moderate, while other versions note that his disorder is only mild. Some versions of the IEP note that the ARD Committee meeting resulted in an agreement reached by the IEP team, whereas others note that the meeting ended in disagreement. The various versions of the FIEs and IEPs have different dates, even though it is undisputed that only one FIE was performed on C.C. Jr. and only one ARD Committee meeting was held. As the Hearing Officer noted, "[i]t is hard to fathom how . . . additional versions of the IEP could exist for dates on which there was no meeting." (R. at 13.)

These procedural deficiencies in the development of the FIE and IEP resulted in a denial of the Plaintiffs' right to meaningful participation in developing C.C. Jr.'s IEP and a denial of a FAPE to C.C. Jr. As BISD does not appear to dispute the Hearing Officer's findings that BISD's IEP was substantively deficient, the court does not consider the Hearing Officer's determination on that issue.

Lastly, BISD contends that the Hearing Officer erred in concluding that compensatory services are to be calculated using the timeline containing January 27, 2013, as the date BISD was on notice. The court agrees. The compensatory award must be calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place. *Phillips v. District of Columbia*, 763 F. Supp. 2d 240, 248 (D.D.C. 2010). As discussed above, BISD had reason to suspect C.C. Jr.'s disability by his third birthday—January 25, 2013. At that time, BISD should have conducted an evaluation and referral. This court finds, by a preponderance of the evidence, that C.C. Jr.'s compensatory services should be calculated using the timeline containing January 25, 2013 as the date that BISD was on notice of C.C. Jr.'s disability.

This court's findings do not materially alter the Findings of Fact or Conclusions of Law found by the Hearing Officer and do not materially alter the relief ordered by the Hearing Officer.[10] Therefore, the court declines BISD's invitation to strike or amend the Hearing Officer's Findings of Fact or Conclusions of Law.

---

[10] The Hearing Officer found that that C.C. Jr.'s referral should have been initiated on January 27, 2013, the date that BISD was on notice that Plaintiffs were requesting a referral. However, as discussed above, this court finds that BISD's duty to identify and provide services for C.C. Jr. arose on January 25, 2013. Therefore, C.C. Jr.'s referral should have been initiated on January 25, 2013. The ARD Committee meeting should have been held ninety days later on April 26, 2013, assuming a sixty-day time period to complete the evaluation and another thirty days to convene the ARD Committee meeting. *See* 34 C.F.R. § 300.323(c); 19 Tex. Admin.

**2. A Texas Special Education Hearing Officer Does Not Have an Obligation or the Authority to Hear Motions to Reconsider.**

BISD also requests that this court conclude that a Special Education Hearing Officer has the authority to reconsider "an obvious and agreed upon error in her Decision, and to remand this matter to the below Hearing Officer [sic]." (Dkt. # 17, at p. 14). Plaintiff argues that because decisions made in a due process hearing are final, and because the aggrieved party's only recourse is appeal, the Hearing Officer does not have jurisdiction to hear a motion to reconsider.

Pursuant to 20 U.S.C. § 1415 and 34 C.F.R. § 300.514, a decision made in a due process hearing in Texas is final, except that any party aggrieved by the decision may appeal the decision by bringing a civil action in a State court of competent jurisdiction or in a federal district court. *See* 19 Tex. Admin. Code § 89.1151(b) (noting that Texas has only a one-tier administrative process). It is unclear from this statute whether Congress intended for an appeal to be the *only* recourse for an aggrieved party. Where the language of the statute is ambiguous and the intent of Congress unclear, "the court does not simply impose its own construction on the statute as would be necessary in the absence of administrative interpretation." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). Rather, the court must give considerable weight to an agency's construction of a statutory provision if it is a reasonable interpretation. *Id.* at 843-44.

The United States Department of Education Office of Special Education Programs ("OSEP") is the federal agency charged with the administration, interpretation, and enforcement of the IDEA. *See Magyar v. Tucson Unified Sch. Dist.*, 958 F. Supp. 1423, 1439 (D. Ariz. 1997); *In re John Doe v. Bd. Educ. Oak Park River Forest High Sch. Dist.*, No. 94C6449, 1996 WL

---

Code § 89.1050. Because this only a two day difference from the date that the Hearing Officer reached in her decision, this court's finding does not materially alter the relief ordered by the Hearing Officer.

197690, at *2 (N.D. Ill. Apr. 22, 1996). On October 28, 2010, OSEP published an opinion letter which addresses the issue of whether a hearing officer has the authority to consider a motion for reconsideration of a due process hearing decision. *Letter to Matthew Weiner*, 57 IDELR 79 (OSEP 2010). This letter explains:

> Once a final decision has been issued, no motion for reconsider is permissible. However, a State can allow motion for reconsideration prior to issuing the final decision, but the final decision must be issued within the 45-day timeline or a properly extended timeline. . . . Consistent with the information in this letter, OSEP intends to provide guidance advising all States that motions for reconsideration after the issuance of a final decision are not permissible.

*Id.* at 2. OSEP's interpretive statement commands deference because it is a reasonable interpretation of the statute. Therefore, the court finds that a Texas Special Education Hearing Officer is not obligated, nor does a Texas Special Education Hearing Officer have the authority, to hear a motion for reconsideration. The court declines to remand this case to the Hearing Officer.

**B. Plaintiffs' Motion for Summary Judgment**

**1. Legal Standard for Prevailing Party Status.**

Pursuant to the IDEA, the court, "in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B); *see also* 34 C.F.R. § 300.517(a)(1)(i). Plaintiffs may be considered "prevailing parties" for purposes of attorney's fees "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The focus of this inquiry is "the material alteration of the legal relationship of the parties." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989).

**2. Plaintiffs Were the Prevailing Party Below.**

Having reviewed the administrative record and having considered the court's findings as to BISD's motion for summary judgment, which are in accord with the Hearing Officer's findings at the administrative level, the court finds that the Plaintiffs meet the requirements of a prevailing party with respect to the claims on which they were successful. Plaintiffs prevailed on the following: (1) whether BISD failed to timely evaluate C.C. Jr. as a student eligible for services under IDEA; (2) whether BISD denied Plaintiffs meaningful participation in the development of C.C. Jr.'s educational program by failing to provide Plaintiffs with copies of C.C. Jr.'s FIE and IEP; (3) whether BISD failed to develop appropriate IEP goals and objectives to meet C.C. Jr.'s academic and nonacademic needs; and (4) whether BISD erred in providing C.C. Jr. a Service Plan rather than offering C.C. Jr. a FAPE and an opportunity for dual enrollment.

Although Plaintiffs did not prevail on every single issue before the Hearing Officer, the only relief granted by the Hearing Officer's decision was in the Plaintiffs' favor. The court finds that Plaintiffs were the prevailing parties as to those issues because the relief granted materially altered the relationship between BISD and Plaintiffs as to C.C. Jr.'s education, speech services, and ESY services.

However, the court, in its discretion, finds that attorney's fees and costs awarded to Plaintiffs shall be limited to those incurred in the preparation of the issues upon which Plaintiffs prevailed at the underlying hearing and the instant lawsuit, to the extent that they are severable. *S.F. v. McKinney Indep. Sch. Dist.*, No. 4:10-CV-322-RAS-DDB, 2012 WL 718589, at *17 (E.D. Tex. Mar. 6, 2012); *S.H. v. Plano Indep. Sch. Dist.*, No. 4:08-CV-96, 2010 WL 1375177, at *12 (E.D. Tex. Mar. 31, 2010). "A finding that a party is a prevailing party only makes him

eligible to receive attorneys' fees under the IDEA; it does not automatically entitle him to recover the full amount that he spent on legal representation." *Richard R.*, 591 F.3d at 421.

Prior to the court's recommendation as to the amount to be awarded, the parties are encouraged to reach an agreement regarding Plaintiffs' reasonable and necessary attorney's fees. If the parties are unable to reach such an agreement, Plaintiffs should file a motion for attorney's fees within twenty-one (21) days of this order. *See* Scheduling Order, Dkt. # 12. Even if parties reach an agreement as to the amount of fees, BISD may reserve its right to appeal the court's underlying finding that Plaintiffs are the prevailing party.

The court cautions Plaintiffs that they shall support their request for fees with specific cites to the relevant billing records and specifically show how they determined the amount requested considering the claims they prevailed on, whether the claims they did not prevail on are severable form the claims they did prevail on, lodestar calculations, the *Johnson* factors, and the provisions for reduction of fees set forth in 20 U.S.C. § 1415(i)(3)(F). 20 U.S.C. § 1415(i)(3)(F); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1994); *Ruben A.*, 657 F. Supp. 2d at 778-89.

## IV. Conclusion

IT IS THEREFORE ORDERED THAT Plaintiffs' Motion for Summary Judgment (Dkt. # 16) is GRANTED IN PART in that the court finds that Plaintiffs were the prevailing party below.

IT IS FURTHER ORDERED THAT BISD's Motion for Summary Judgment (Dkt. # 17) is DENIED.

IT IS FURTHER ORDERED THAT Plaintiffs shall file their Motion for Attorney's Fees within twenty-one (21) calendar days of this order, as outlined above, and pursuant to this court's Scheduling Order. (Dkt. # 12).

IT IS FURTHER ORDERED THAT both BISD and Plaintiffs follow the guidelines above, as well as the guidelines outlined in this court's Scheduling Order, in meeting and conferring and submitting their briefing to the court. (Dkt. # 12).

So **ORDERED** and **SIGNED** this **23** day of **March, 2015.**

Ron Clark, United States District Judge